IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEITH COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:17-CV-00834-PPS-MGG |
| v. ) | |
| ) | |
| CITY OF ELKHART, STEVE REZUTKO, ) | |
| EDWARD WINDBIGLER, STEVEN ) | |
| AMBROSE, and TOM CUTLER, in their ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR JUDGMENT ON THE PLEADINGS**

DEFENDANTS City of Elkhart, Steve Rezutko, Edward Windbigler, Steven Ambrose, and Tom Cutler, by counsel file the following Reply in support of their Rule 12 (c) Motion for Judgment on the Pleadings.

**ARGUMENT**

**I.    Judicial Estoppel Is Inapplicable**

In its Response, the Plaintiff proffers a procedural argument to block consideration of the Defendants' argument by asking this Court to apply judicial estoppel and adopt specific portions of the City's Response to Cooper's Petition for Executive Pardon. [DE # 59-2 at 3]. However, the doctrine of judicial estoppel is only applicable to statements or positions made in judicial or quasi-judicial administrative proceedings. *See* New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (holding that the party must have "succeeded in persuading *a court* to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the *first or second court* was misled'") (internal citation

1

omitted) (emphasis added); *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1193 (7th Cir. 1992) ("The doctrine precludes parties from abandoning positions taken in *earlier litigation*.") (emphasis added); *In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) ("Where a party assumes a certain position in a *legal proceeding* . . . .") (emphasis added); *Czajkowski v. City of Chicago*, 810 F. Supp. 1428, 1447 (N.D. Ill. 1992) ("[I]t is only necessary [in applying judicial estoppel] that the opportunity for *full litigation* be available. . . . The Police Board proceedings were a *quasi-judicial administrative proceeding*. . . .") (emphasis added).

      Plaintiff argues that his hearing before the Indiana Pardon and Parole Board is analogous to administrative proceedings to which other courts in the Seventh Circuit have applied judicial estoppel. [DE # 59-2 at 5]. Although that may be under certain circumstances, the Defendants were never parties to or participants in Cooper's Petition for Executive Pardon before the Indiana Pardon and Parole Board; rather, the City's Response was submitted directly to the office of former Governor Mike Pence for his consideration following the Pardon and Parole Board's recommendation. [DE # 59-3 at 2]; [DE # 59-4 at 2]. Thus, the precise statements and position that Plaintiff complains of were not presented or litigated in any judicial or quasi-judicial administrative proceeding involving the Defendants, and therefore judicial estoppel does not apply.

      The doctrine of judicial estoppel is further inapplicable because Plaintiff cannot show that the Defendants "succeeded" in persuading then-Governor Pence to accept the City's position to deny the pardon request. *See New Hampshire*, 532 U.S. at 750 (requiring the party to have "succeeded in persuading a court to accept that party's earlier position"). Plaintiff cites to three statements in support of his argument that the City has taken inconsistent positions with regards

to whether Plaintiff's sentence modification in 2006 invalidated his conviction.[1] [DE # 59-2 at 6]. Plaintiff argues that because of these statements, former Governor Pence "[did] not grant Plaintiff's pardon request" and "refused to act." [DE # 59-2 at 7]. However, Plaintiff did not and indeed cannot demonstrate that these particular statements were the reason why former Governor Pence "refused to act." The City's Response to Cooper's Petition for Executive Pardon contains thirty-eight pages of reasons for possibly denying Plaintiff's Petition, any one of which former Governor Pence could have chosen in his decision not to act on Plaintiff's pardon request. [DE # 59-4]. Thus, because Plaintiff cannot demonstrate that Defendants "succeeded" in persuading former Governor Pence to accept this particular position[2] for which preclusion is sought, judicial estoppel is inapplicable.

## II. Plaintiff's Conviction and Sentence Were Effectively Invalidated by His 2006 Sentence Modification.

Plaintiff also argues that his conviction and sentence were not invalidated by his 2006 sentence modification. [DE # 59-2 at 9]. Plaintiff contends that his post-conviction proceedings and sentence modification process were not discussed in his Complaint, and thus any discussion on these matters fall outside the contours of Plaintiff's Complaint and should not be considered in ruling on this motion. [DE #59-2 at 9-10]. Both contentions are incorrect.

First, Plaintiff's Complaint does contain discussion of his post-conviction proceedings and sentence modification process. In Paragraphs 119 and 128 of Plaintiff's Complaint, he states

---

[1] It should be noted that nowhere in these three statements did the City address the question of whether Plaintiff's sentence modification *effectively invalidated* his conviction. It was and still is the Defendants' position that the Plaintiff's conviction was not overturned, vacated, or set aside by the sentence modification. Rather, as Defendants argued in their Motion for Judgment, Plaintiff's conviction was *effectively invalidated* and *called into question* by the sentence modification. [DE # 46 at 12-15]. That particular position was not "litigated" in any sense of the word either in front of the Pardon and Parole Board, or in front of former Governor Pence. [DE # 59-4 at 2-3, 32]. Thus, judicial estoppel is further inapplicable here.
[2] Which, as already established in Footnote 1, was a position that was neither taken by the Defendants in the City's Response nor was litigated in a judicial or quasi-judicial administrative proceeding.

that he was convicted of armed robbery and sentenced to forty years in prison. [DE #1 at 18, 19]. Plaintiff also states in Paragraphs 135 and 136 that in 2002—"approximately five years after [Plaintiff] had been convicted"—his attorney requested additional DNA testing. [DE # 1 at 20-21]. Further, in Paragraph 142, Plaintiff admits that he had "post-conviction counsel" conducting a re-investigation. [DE #1 at 22]. In addition, in Paragraphs 1, 2, and 185, Plaintiff states that—despite receiving a forty-year sentence—he was released after spending a decade in prison. [DE # 1 at 1, 29]. Finally, Plaintiff's Complaint is peppered with references to investigations, statements, and affidavits taken by his post-conviction counsel. *See, e.g.*, [DE # 1, at 20]. Thus, Plaintiff's Complaint does in fact contain discussion of his post-conviction proceedings and sentence modification process. Regardless, as documents pertaining to Plaintiff's post-conviction proceedings and sentence modification are public records, this Court may take judicial notice of them in ruling on a motion to dismiss under Rule 12(b)(6). See <u>White v. Keely</u>, 814 F.3d 883, 886 n.2 (7th Cir. 2016); <u>Olson v. Champaign County, Ill.</u>, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015). *See also* <u>Papasan v. Allain</u>, 478 U.S. 265, 268 n.1 (1986).

Second, as to Plaintiff's contention that "the sentence modification statute in Indiana does not invalidate a conviction," the Defendants concede that point. However, Plaintiff misunderstands Defendants' argument; Defendants do not suggest that sentence modifications *in general* invalidate a conviction or sentence. Rather, as evidenced by their discussion in support of the Motion for Judgment, Defendants argue that Plaintiff's conviction and sentence were invalidated by *his particular sentence modification*. [DE # 46 at 12-15v]. First, the state court modified Plaintiff's sentence without following the mandatory sentencing or parole statues in place at the time. [DE # 46 at 13-14]. Second, when considered in the procedural context of the 2006 PCR Petitions made by Christopher Parish and Plaintiff—the sentence modification order

4

was given in light of Christopher Parish's successful PCR petition, which overturned Parish's conviction on grounds of ineffective counsel. [DE # 46 at 14]. The decision by the Court of Appeals in Parish's PCR was precedent that Cooper's PCR would have enjoyed the same result. Third, Defendants demonstrated that Plaintiff's particular sentence modification and federal writs of habeas corpus were similar in that neither reversed nor overturned the underlying conviction, but called the validity of the underlying conviction into question based on alleged Constitutional violations. [DE # 46 at 14-15]; see Wilkinson v. Dotson, 554 U.S. 74, 81 (2005) ("[S]tate prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody."). Finally, Defendants made note of the fact that Plaintiff chose the manner of his relief; rather than waiting for his PCR Petition to potentially overturn his conviction, Plaintiff chose to withdraw it and accept the court's sentence modification order, effectually achieving the same result. [DE # 46 at 13].

Thus, based on the totality of the circumstances surrounding Plaintiff's *particular* sentence modification, his conviction and sentence were in effect invalidated on April 27, 2006, and terminated in a manner favorable to him, and any cause of action for wrongful conviction accrued on that date. Because Plaintiff's cause of action accrued on April 27, 2006, his claims in Counts I through VII are now time-barred. *See* Richards v. Mitcheff, 696 F.3d 635,637 (7th Cir. 2012).

### III.   Plaintiff's Conviction Was Not Set Aside by Governor Holcomb's Pardon Because the Pardon Did Not Expunge Plaintiff's Conviction

Plaintiff argues in his Response that his conviction was "set aside" when Governor Eric Holcomb pardoned him. [DE # 59-2 at 13]. However, Plaintiff's conviction was not "expunged

by executive order," as required by *Heck*. [DE # 46 at 15-17]; *see Heck v. Humphrey*, 512 U.S. 477, 487 (1994). As such, should the Court find that Plaintiff's conviction and sentence were not invalidated by the 2006 sentence modification, in the alternative the Court should find that Plaintiff's § 1983 claims are barred by *Heck*. *See Heck*, 512 U.S. at 487.

      Plaintiff is incorrect in suggesting that pardons *in general* are sufficient to invalidate a conviction for *Heck* purposes. [DE # 59-2 at 30]. Rather, courts in this Circuit interpreting the applicability of *Heck* have repeatedly held that gubernatorial pardons, which are sufficient for *Heck* purposes, must be based on a *specific* finding of innocence and a pardon that fails to do so does not invalidate a conviction under *Heck* as an "expungement by executive order." *See Newsome v. McCabe*, 256 F.3d 747, 749 (7th Cir. 2001) (holding that a "claim based on wrongful conviction and imprisonment did not accrue until" the Governor of Illinois granted Newsome a pardon based on innocence); *Kitchen v. Burge*, 781 F. Supp. 2d 721, 735 (N.D. Ill. 2011) (holding that "the claim will not have accrued until after [Kitchen's] conviction was set aside," which the court determined was the date he received his certificate of innocence); *Walden v. City of Chicago*, 391 F. Supp. 2d 660, 671-72 (N.D. Ill. 2005) (noting that "unless the pardon specifically and explicitly states that it is based on the innocence of the defendant, the pardon is to be considered general, and thus does not absolve the criminal defendant," and holding that "the gubernatorial pardon [Walden] received [stating simply that Walden was acquitted] . . . was a general pardon [and] did not invalidate his conviction or act to terminate [Walden's] conviction in his favor for purposes of *Heck*"); *Patterson v. Burge*, 328 F. Supp. 2d 878, 885, 897 (N.D. Ill. 2004) (explaining that plaintiff's "§ 1983 claims . . . did not accrue until his conviction was overturned in January of 2003" when Governor George Ryan "granted Patterson . . . [a] pardon[] on the basis of innocence").

While Plaintiff properly states that <u>Blake v. State</u>, 860 N.E.2d 625 (Ind. Ct. App. 2007), stands for the proposition that in Indiana courts look to the "specific language in [the] pardon" in analyzing the impact of a pardon, Plaintiff misconstrues the specific language in the four corners of Governor Holcomb's pardon. [DE # 59-2 at 30-31]. First, Plaintiff states in his Response that "the Executive Order granting Plaintiff's pardon discusses his 'wrongful' conviction[.]" [DE # 59-2 at 30-31v]. However, the word "wrongful" does not appear anywhere in the language of Governor Holcomb's pardon, and it was improper for Plaintiff to suggest so by putting quotes around the word in his Response. [DE # 42-2v]. Second, while Governor Holcomb does mention some of the "evidence . . . has changed dramatically" since Plaintiff's conviction, he never states that these changes unequivocally prove Plaintiff's innocence; rather, Governor Holcomb explicitly stated that in the totality of the circumstances, Plaintiff's case was "deserving of consideration for a pardon." [DE # 42-2 at 2]. Finally, there is no language contained within the four corners of Governor Holcomb's pardon that unequivocally demonstrates an intent to declare Plaintiff innocent. [DE # 42-2]. Therefore, because Plaintiff was not declared innocent by the pardon itself, Plaintiff's conviction was not "expunged by executive order" as required by *Heck* and any claims brought under § 1983 are barred.

As to Plaintiff's argument that his expungement hearing in front of Elkhart County Circuit Court Senior Judge Duffin is not subject to judicial notice, that is not a correct statement of the law. A federal court may take judicial notice of an adjudicative fact that is both "not subject to reasonable dispute" and either 1) "generally known within the territorial jurisdiction of the trial court" or 2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is appropriate here because "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the

contents of court records." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081-82 (7th Cir. 1997) (internal citation omitted). *See also White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016); *Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015); *Spaine v. Comm. Contacts, Inc.*, 756 F.3d 542, 545 (7th Cir. 2014) (noting that courts "may take judicial notice of publicly available records of court proceedings," including transcripts) (internal citation omitted); *GE Capital Corp.*, 128 F.3d at 1082 ("[I]f the finding taken from the prior proceeding is 'not subject to reasonable dispute,' then the court has satisfied the evidentiary criteria for judicial notice."); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed).

### IV. Defendants are Protected by the Doctrine of Absolute Immunity for Any and All Testimony Given at Trial

In his Response, Plaintiff states that Defendants are "not being sued for testifying at trial." [DE # 59-2 at 31]. Given the wording of the Complaint alleging that the Defendant officers' false testimony caused Cooper's wrongful conviction, this statement is a surprise. Plaintiff made numerous references to Defendant officers testifying falsely or failing to disclose certain information on the witness stand. [DE # 46 at 17-18]. However, the Defendants accept the Plaintiff's Response statement. To the extent that Plaintiff *is* suing Defendants for testifying falsely, those claims are barred because Defendants are immune and there is no remedy against the City. *See Briscoe v. LaHue*, 460 U.S. 325, 335-41 (1983); *Newsome v. McCabe*, 319 F.3d 301, 304 (7th Cir. 2003).

### V. Plaintiff's *Monell* Claim Is Not Adequately Pled

Plaintiff states that his *Monell* claim is sufficiently plead because the "Facts" section of his Complaint "contains detailed allegations related to municipal liability that well exceeds the pleading requirements of Rule 8(a)." [DE # 59-2 at 35]. However, Plaintiff's actual *Monell*

claim—Count VII in his complaint—makes no direct reference to which of these alleged policies and practices led to Plaintiff's injuries or to any specific policies that allowed for or acquiesced in the Defendant officer's alleged conduct. [DE #1 at 37-38]. Count VII does not give the City any information as to which policies Plaintiff is referring to, nor does it state which actions Defendant officers took pursuant to these alleged policies. [DE # 1 at 37-38]. By the specific language of Count VII, Plaintiff does not put the Defendant City on notice of the claim against it. [DE # 1 at 37-38v]. Plaintiff essentially asks the Defendants to parse and decipher which of his 189 paragraphs of "Facts" are applicable to his *Monell* claim. Therefore, because Plaintiff has not pleaded sufficient facts to allow the Defendant City "to understand the gravamen" of Plaintiff's *Monell* claim, Plaintiff has failed to state a claim. *See* <u>Payton v. Rush-Presbyterian St. Luke's Med. Ctr.</u>, 184 F.3d 623, 627 (7th Cir. 1999) (quoting <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 326 (7th Cir. 1996)).

### VI. Plaintiff's State Law Claims Against the City Are Barred Under the Indiana Tort Claims Act

Although Plaintiff voluntarily dismissed his state-law claims for intentional infliction of emotional distress (Count X) and negligent infliction of emotional distress (Count XI) in his Response, *see* [DE # 59-2 at 38 n.10], Plaintiff's two remaining state law claims are barred as well under the Indiana Tort Claims Act (ITCA).

Defendants readily agree that they received a notice of tort claims from Plaintiff in mid-February 2017; that is not a fact in contention, despite Plaintiff's attempt to say otherwise. [DE # 46 at 23-24]; [DE # 59-2 at 37-38]. Rather, Defendants' argument is that Plaintiff's (now remaining) state law claims of Negligent Supervision (Count VIII) and Respondeat Superior (Count IX) are barred because he failed to send the notice within the requisite time frame under the ITCA and these state law claims are barred by this procedural failure. As argued in

Defendants' memorandum of law [DE # 46 at 22-23], under the ITCA potential plaintiffs are required to send a notice of tort claims within 180 days "after the loss occurs." I.C. § 34-13-3-8. The purpose of sending this notice is two-fold: the claim informs the political subdivision of the supposed wrongdoing so that it may investigate and prepare a defense, and the claim serves as a plaintiff's announcement of his or her intention to assert a claim. *See Indiana State Highway Comm'n v. Morris*, 528 N.E.2d 468, 471 (1988). The date that triggers the time limitation to file tort claim notice is the date on which the plaintiff's cause of action accrued. *Garnelis v. Ind. State Dep't of Health*, 806 N.E.2d 365, 371 (Ind. Ct. App. 2004) (citing *City of Hobart Sewage Works v. McCullough*, 656 N.E.2d 1185, 1189 (Ind. Ct. App. 1995). "A cause of action for a personal injury claim accrues and the statute of limitation begins to run 'when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another.'" *Garnelis*, 806 N.E.2d at 371 (quoting *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992)). If the claim directly implicates the validity of the conviction, the loss does not occur and the claim does not accrue "until the conviction has been disposed of in a manner favorable to the plaintiff." *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010); *Parish v. City of Elkhart*, 2010 U.S. Dist. LEXIS 110686, at *4-5 (N.D. Ind. Oct. 15, 2010) (citing *Johnson v. Blackwell*, 885 N.E.2d 25, 30 (Ind. Ct. App. 2008).

Plaintiff's claim of negligent supervision is a general one alleging that Defendant Cutler and other supervisors negligently failed to train and supervise officers, detectives, and supervisors in the police department and to implement policies to prevent misconduct including fabricating evidence and statements and concealing impeachment evidence. [DE #1 at p. 38]. As such, this claim is tied not only to Plaintiff's arrest and conviction but to all arrests by any

officers who allegedly did not receive adequate training and supervision. Therefore, the claim does not directly implicate the Plaintiff's conviction. The accrual of this claim occurred when Plaintiff knew, or should have known, about the tort of negligent training and lack of supervision. Initially, that would have been when he was allegedly falsely stopped and arrested for purse snatching, threatened with the Kershner shooting, and later charged for that crime, all of which occurred from January through March 1997. Plaintiff was aware by April 27, 2006, when his conviction was invalidated by the sentence modification order [DE #46 at 12-15] that the officers were allegedly not trained or supervised. It was within 180 days of these dates that Plaintiff needed to file his notice of tort claim with the Defendants to allow the City time to investigate any claims. And at the very latest, when Parish filed his federal law suit in this court in 2007 alleging inadequate training and supervision for the Kershner shooting investigation, Plaintiff was aware of this alleged misconduct. Instead, Plaintiff waited 19 years after his conviction, 12 years after the Indiana Court of Appeals freed co-defendant Parish, 11 years after he was freed under a sentence modification, and 10 years after Parish filed a federal civil rights suit to file his own law suit. Plaintiff was well aware of any negligent supervision claims more than a decade ago and must have filed those claims with two years of the date of accrual. Because he failed to do so, these claims are barred. *See* I.C. § 34-11-2-4.

      Plaintiff's claim in Count IX that the City is liable him for the tortious acts of its police officers under respondeat superior fails because in any event, the Defendant officers are immune under the ITCA. See [DE #46 at 23-24]. The employment and supervision of government officials is considered a discretionary function and the City and its officers are immune from any liability for negligent supervision. *See* I.C. §34-13-3-3(7); *Camm v. Faith,* 2018 U.S. Dist. LEXIS 13724, at *58-59 (S.D. Ind. Jan. 29, 2018); *Foster v. Pearcy*, 387 N.E.2d 446, 449-50

(Ind. 1979) ("Generally, 'the employment and supervision of deputies and employees in governmental offices . . . is a discretionary function' immunized under the ITCA.")  In addition, a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the initiation of a judicial or administrative proceeding. I.C. 34-13-3-3(6). <u>F.D. et al., v. Ind. Dep't Child Servs</u>., 1 N.E.3d 131, 137 (Ind. 2013) (citing <u>Livingston v. Consol. City of Indianapolis</u>, 398 N.E.2d 1302, 1306 (Ind. Ct. App. 1979) (immunity granted under ITCA to the State and municipal subdivisions and police officers in actions for malicious prosecution)).

Therefore, Defendants are immune from liability for all of Plaintiff's remaining Indiana state law claims pursuant to the ITCA.

## CONCLUSION

For the above stated reasons, the Defendants request the Court grant their motion for judgment on the pleadings.

| **NEWBY LEWIS KAMINSKI AND JONES, LLP** | **HUNT SUEDHOFF KALAMAROS LLP** |
|---|---|
| By  /s/ Martin W. Kus<br>Martin W. Kus, #5377-46<br>Matthew J. Hagenow, # 22378-46<br>Nicholas T. Otis, # 27992-64<br>916 Lincolnway, P.O. Box 1816<br>La Porte, IN  46350<br>Telephone (219) 362-1577<br>Facsimile (219) 362-2106<br>Email:  mwkus@nlkj.com<br>mjhagenow@nlkj.com<br>ntotis@nlkj.com<br>*Attorneys for the Defendant, City of Elkhart* | By /s/ Andrew S. Williams<br>Andrew S. Williams, #23797-02<br>Michelle K. Floyd, # 29249-02<br>803 South Calhoun Street, 9th Floor<br>PO Box 11489<br>Fort Wayne, IN 46858-1489<br>Telephone: (260) 423-1311<br>Facsimile: (260) 424-5396<br>Email: awilliams@hsk-law.com<br>mfloyd@hsk-law.com<br>*Attorneys for the Defendants Rezutko, Cutler, Windbigler and Ambrose* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEITH COOPER,   )<br>   )<br>      Plaintiff,   )<br>   )<br>   )<br>   )<br>CITY OF ELKHART,   )<br>STEVE REZUTKO,   )<br>EDWARD WINDBIGLER,   )<br>STEVEN AMBROSE, and   )<br>TOM CUTLER, in their   )<br>individual capacities   )<br>   )<br>      Defendants.) | CASE NO.   3:17-CV-00834-PPS-MGG |

PROOF OF SERVICE

I hereby certify that on the 8th day of October, 2018 I electronically filed a complete copy of Defendants' Reply in Support of their Motion for Judgment on the Pleadings and this Proof of Service with the Clerk of the Court CM/ECF system:

Elliot R. Slosar: elliot@loevy.com;
Jon Loevy: jon@loevy.com ;
Gayle Horn: gayle@loevy.com;
Heather Lewis Donnell: heather@loevy.com;
Matthew J. Hagenow: mjhagenow@nlkj.com;
Nicholas T. Otis: ntotis@nlkj.com;
Andrew S. Williams: aswilliams@hsk-law.com;
Michelle K. Floyd: mfloyd@hsk-law.com

**NEWBY, LEWIS, KAMINSKI AND JONES, LLP**

By:  /S/ Martin W. Kus