IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEITH COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:17-CV-00834-PPS-MGG |
| v. | ) |
| | ) |
| CITY OF ELKHART, STEVE REZUTKO, | ) |
| EDWARD WINDBIGLER, STEVEN | ) |
| AMBROSE, and TOM CUTLER, in their | ) |
| individual capacities, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT CITY OF ELKHART'S RESPONSE TO
PLAINTIFF'S MOTION TO STRIKE MARK DAGGY'S ERRATA SHEET**

DEFENDANT City of Elkhart, ("the City") by counsel, Newby, Lewis, Kaminski & Jones, files the following response to Plaintiff's Motion to Strike Mark Daggy's errata sheet changes to his deposition and asks the Court to deny the motion.

**INTRODUCTION**

Plaintiff argues that Daggy's errata sheet contradicts his December 19, 2018, deposition testimony that there were no policies that required disclosure of exculpatory evidence and that he had no concept of what *Brady v. Maryland* required police officers to do or that he was required to disclose exculpatory evidence. [DE 97, pp. 2,3 and 5]. Daggy however testified that he had an understanding of the duty to disclose all exculpatory evidence in a criminal file. His errata sheet addressed his confusion about *Brady v. Maryland's* application to

officer's personnel files was not inconsistent with his testimony that exculpatory evidence needed to be disclosed to an accused or his attorney.

**Standard of Review**

Under Fed. R. Civ. P 30(e)(1), upon request by a deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them. The Seventh Circuit has elected a narrow interpretation of Rule 30(e), only permitting corrections of typographical and transcriptional errors and plaintiff correctly cites that a change in substance by an errata sheet which actually contradicts the transcript, similar to a "sham affidavit, is impermissible unless it can plausibly be represented as the correction of an error in transcription such as dropping a "not." [Thorn v. Sundstrand Aero. Corp., 207 F.3d 838 (7th Cir. 2000)](). However, substantive changes that contradict the deposition testimony may be recognized but only in limited circumstances, including when the change is submitted to clarify ambiguous or confusing testimony. [Cowan v. Prudential Ins. Co. of America, 141 F.3d 751, 756 (7th Cir. 1998)](). The explanation for the change must be plausible. [Santos v. Cty. Of Lake, 2018 U.S. Dist. LEXIS 185466 (N.D. Ind. Oct.30, 2018)]().

In reviewing a claim of a "sham" change in testimony, the courts "examine the particular circumstances of a change in testimony to see whether it is plainly

incredible or merely creates a credibility issue for the jury." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 488 (7th Cir. 2007). If the changed testimony is "incredible and unexplained" courts may disregard an affidavit, and by analysis, an errata sheet, because when the change is "plausible and 'the party offers a suitable explanation . . . ,'" the fact of contradiction "affects only [the testimony's] credibility, not its admissibility." In this regard, the Seventh Circuit has observed that the Ninth and Tenth Circuits require district courts to "make a factual determination that the contradiction is actually a 'sham'" before disregarding it when deciding a motion for summary judgment. *Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1168-69, n. 10 (7th Cir. 1996);*Bank of Ill.*, 75 F.3d at 1169 n. 10 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991)and *Durtsche v. Am. Colloid Co.*, 958 F.2d 1007, 1010 n.2 (10th Cir. 1992)). The court explained:

> "[A]lthough we have not required such an explicit finding [that a contradiction is a 'sham'], our cases make clear that the general rule does not apply to every instance when a later affidavit contradicts prior sworn testimony . . . [but] only to cases in which the statements are inherently inconsistent and in which the contradiction is not the result of an honest discrepancy or newly discovered evidence. *Id.*, 75 F. 3d at 1169.

Based upon the above standards of review, the City believes the motion to strike should be denied.

**I. Daggy's errata sheet change did not contradict his testimony that exculpatory evidence must be disclosed to a defendant.**

Mark Daggy was hired as a police officer with the Elkhart Police Department on March 8, 1994 and worked there until 2015 when he transferred to the Elkhart

County-Wide Homicide Unit where he now works as an investigator for the Elkhart County Prosecutor. [DE 97-1, p. 17, l. 10-16] He was not involved in the investigation of the 1996 shooting of Michael Kershner that the plaintiff was charged and convicted of nor did Daggy speak to any witnesses about their statements or investigate any allegations of misconduct against Mr. Cooper. [DE 97-1, p. 17, l. 3-9] Daggy was questioned at his deposition about his involvement in the investigation of the murder of Helen Sailor in her apartment in Elkhart, Indiana in 2002 which resulted in charges against Andrew Royer and Lana Canen. [DE 97-1, -87, l. 2-11]

At his deposition, Daggy was asked the following question and gave the following responses on direct examination:

> Q. Are you aware of any written policy or procedure at the Elkhart Police Department that requires a police officer to document exculpatory information learned in the course of a criminal investigation?
>
> A. As far as exculpatory, I don't know if it's in, like in a policy. But I know that when we do investigations, we got to put it all in there, exculpatory.

[DE 97-1, p. 43, l. 13-19]

. . . .

> Q. So your practice, I think, is what you were talking about. You know, when you're an investigator, was it your practice to document exculpatory information that you learned during the course of a criminal investigation?
>
> A. Yes.

[DE 97-1, p. 44. L. 1-5]

On cross examination, Daggy was gave the following testimony:

> Q. What is your understanding of the duty of a police officer who comes across evidence that shows an accused or a suspect might be innocent in a crime? What is your understanding of your duty in producing that evidence to the suspect or his or her counsel?
>
> Objection to form.
>
> Well, it's exculpatory. I think we touched on, if that where you're going with it, it needs to be --- show to both sides. If it's something that could prove innocence, that needs to be shown to both sides.

[DE 97-1 p. 269, l. 1-10]

> Q. What do you call it when a file is made available to opposing counsel or defendant?
>
> Objection to form.
>
> A. I call it just, like, disclosure.
>
> Q. Yep. Was full disclosure made of all documents and reports to Mr. Royer and Ms. Canen in prosecution of the crimes against them.
>
> Objection to form, calls for speculation.
>
> A. Was all files given to --
>
> Q. Yes.
>
> A. Yes.
>
> Same objection.

[DE 97, p. 270, l. 5-16]

At his deposition, Daggy testified that his mind was going a mile a minute when he was asked about the case name of *Brady v. Maryland*. [DE 97, p. 66, l. 15-20] but, as shown in the above excerpts, he understood the duty to disclose exculpatory evidence in a criminal investigation. In his errata sheet, Daggy attempted to clear up his confusion over the holding of *Brady v. Maryland* by

stating that he thought it meant if a police officer had exculpatory evidence in his personnel file it had to be released to the prosecutor. Plaintiff's Exhibit 3, Errata Sheet. His confusion as to the understanding of *Brady v. Maryland's* holding was evident when he was asked if there were some people in the Elkhart Police Department who were obligated to disclose Brady-type evidence and he responded: "I think there were some people at Elkhart," [DE 97-1 p. 83, l. 21-25],  and when asked if he was one of the people responsible to disclose *Brady* evidence, he stated "No, no."  [97-1, p. 84, 1-4]   Yet, he had testified that exculpatory material had to be disclosed, so it is clear that he was aware of his duty of disclosure and was confused about the case name and its holding, not about that duty.

Daggy knew the duty of disclose exculpatory evidence.  He was confused about the case name and his errata sheet explained his confusion.  It did not change his testimony that exculpatory material had to be turned over to be disclosed and that explanation should be considered by the jury.

## II. Plaintiff's Motion to Strike is Premature.

The plaintiff's motion to strike attacks the credibility of Daggy as a witness. Courts ordinarily must defer to juries to resolve credibility disputes when witnesses change their testimony after a deposition. *Arce v. Chi. Transit Auth.* 311 F.R.D. 504 (N.D. Ill. 2015). It is only when a court is resolving a summary judgment motion that it is empowered to disregard contradictory testimony offered in an affidavit or an errata sheet—based on its finding from all the circumstances that the factual dispute stemming from the change is a 'sham.' *Id.* at 511. Here, no summary

judgment motion is pending. As a result, there is no reason for the plaintiff to file a motion to strike changes in an errata sheet—or a court to consider such a motion—unless and until a party seeks summary judgment. *Id*. If no party moves for summary judgment, all changes in testimony—even contradictory ones—should be resolved by the jury, just as they are when a witness gives contradictory testimony at trial. Only in the context of summary judgment are courts to scrutinize changes in a witness's deposition testimony to determine whether a change is contradictory and creates a sham factual dispute that should be disregarded. "If a case proceeds to trial, it is up to the jury to hear the testimony of the witness and decide whether any contradictory changes are credible." *Id*. at 512.

      Wherefore, in addition to allowing Daggy's errata sheet to stand because his explanation does not contradict his testimony that exculpatory evidence must be disclosed but only explains his confusion over the holding of the *Brady v. Maryland* case, the City also believes the plaintiff's motion to strike is premature and should be denied at this time.

## CONCLUSION

      The Defendant City therefore requests the Court to DENY the plaintiff's Motion to Strike.

Respectfully submitted,

**NEWBY, LEWIS, KAMNISKI AND JONES, LLP**

By: /s/ Martin W. Kus
Martin W. Kus, #5377-46
Matthew J. Hagenow, #22378-46
916 Lincolnway, P.O. Box 1816
La Porte, IN  46350
Telephone (219) 362-1577
Facsimile (219) 362-2106
Email: mwkus@nlkj.com
mjhagenow@nlkj.com
*Attorneys for the Defendant, City of Elkhart*

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEITH COOPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:17-CV-00834-PPS-MGG |
| v. ) | |
| ) | |
| CITY OF ELKHART, STEVE ) | |
| REZUTKO, EDWARD WINDBIGLER, ) | |
| STEVEN AMBROSE, and TOM ) | |
| CUTLER, in their individual capacities, ) | |
| ) | |
| Defendants. ) | |

## PROOF OF SERVICE

I hereby certify that on the 11th day of March 2019, I served a complete copy of Defendant City of Elkhart's Response to Plaintiff's Motion to Strike Former Elkhart Detective Mark Daggy's Attempt to Substantively change his testimony by Way of an Errata Sheet of Service with the Clerk of the Court CM/ECF system:

John Twohy: jtwohy@eichhorn-law.com
Elliot R. Slosar: elliot@loevy.com;
Jon Loevy: jon@loevy.com;
Gayle Horn: gayle@loevy.com;
Heather Lewis Donnell: heather@loevy.com;
Matthew J. Hagenow: mjhagenow@nlkj.com;
Nicholas T. Otis: ntotis@nlkj.com;
Andrew S. Williams: awilliams@hsk-law.com; and
Michelle Floyd: mfloyd@hsk-law.com

**NEWBY, LEWIS, KAMINSKI AND JONES, LLP**
By: /s/ Martin W. Kus