**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| KEITH COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    CASE NO. 3:17-CV-834-PPS-MGG |
| | ) |
| STEVE REZUTKO, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

On January 16, 2019, Plaintiff, Keith Cooper, filed his Motion for Sanctions Due

to Perjury and Discovery Violations by Defendants Rezutko and the City of Elkhart. On

February 6, 2019, Defendant, City of Elkhart ("the City"), filed its response in

opposition to Plaintiff's motion. On February 21, 2019, a response brief was also filed on

behalf of Defendant Steve Rezutko.[1] Plaintiff's motion became ripe on March 11, 2019,

when he filed his reply brief. On March 27, 2019, Plaintiff's motion was referred to the

undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and

Fed. R. Civ. P. 72(b). [DE 116]. The undersigned then held a motion hearing to discuss

this motion, among others, on September 26, 2019. [DE 157]. Having reviewed the

---

[1] The response brief was styled "Defendant Officers' Response in Opposition to Plaintiff's Motion for Sanctions." [DE 95]. However, the body of the brief explicitly makes argument in the name of Steven Rezutko only. The Court assumes that counsel intended to represent only Mr. Rezutko's position, not that of his other Defendant Officer clients, in the response brief. Additionally, the Court notes that Mr. Rezutko died on February 5, 2019. [DE 112 (Suggestion of Death filed March 21, 2019)]. Diana Rezutko, the personal representative of Mr. Rezutko's estate, was not substituted as Defendant in Mr. Rezutko's place until June 25, 2019. [DE 135]. Therefore, neither Mr. nor Ms. Rezutko were clients of the Defendant Officers' attorney at the time the instant response brief was filed. Nevertheless, the Court will consider the response brief especially after the same attorney appeared on behalf of Ms. Rezutko at the Court's hearing on this motion on September 26, 2019, and made arguments consistent with the response brief.

parties' written briefs and their oral arguments, the undersigned recommends that

Plaintiff's instant motion for sanctions be denied as explained below.

## I.   RELEVANT BACKGROUND

The underlying facts of this case are well documented in other orders issued by

this Court and need not be repeated here except as follows. [*See, e.g.*, DE 99 at 2–4].

Plaintiff's claims arise from his conviction for a 1996 armed robbery in Elkhart.

Plaintiff's co-defendant, Christopher Parish, was also convicted for the same armed

robbery. Plaintiff was pardoned by the Indiana governor in 2017 while the charges

against Parish were dismissed in 2005 on remand from the Indiana Court of Appeals.

Both, represented by the same attorney, subsequently filed Section 1983 civil rights

actions in this Court. In 2010, a jury found in Mr. Parish's favor after which the parties

reached a settlement while the matter pended on appeal. *See* Case No. 3:07-cv-452,

*Parish v. City of Elkhart*. Plaintiff's case, initiated in November 2017, has yet to conclude.

Through his instant motion for sanctions, Plaintiff invokes Fed. R. Civ. P. 37(c)

and asks the Court to enter default judgment, or alternatively impose evidentiary

sanctions, against the City and Mr. Rezutko[2]. Plaintiff alleges that the City withheld

evidence critical to his case since 2008, during the *Parish* litigation, until January 4, 2019,

when it produced internal affairs ("IA") files related to the investigation of alleged

police misconduct by Mr. Rezutko in 1996 and 2001. Plaintiff argues that the City

intentionally refused to produce the highly relevant 1996 and 2001 Rezutko IA files

---

[2] The Court will refer to Mr. Rezutko in this Report and Recommendation even though Diana Rezutko, as the personal representative of the estate of Steven Rezutko, is now the current defendant. [*See* DE 135].

until Plaintiff's counsel suggested he would seek a court order for inspection of the EPD to locate the files. Plaintiff also alleges that Mr. Rezutko perjured himself in his deposition testimony in March 2008 as part of the *Parish* litigation and in interrogatory answers in this case by denying knowledge of the 1996 and 2001 allegations against him.

In its defense, the City argues that it promptly produced the Rezutko IA files in this case once its counsel was made aware of that deficiency in their discovery responses and expanded their search accordingly. The City also contends that the Rezutko IA files were referenced in its discovery responses in *Parish*. As a result, the City asserts that Plaintiff's counsel, who also represented Mr. Parish in his case, had knowledge of the files and had the ability to ask specifically for them long before Plaintiff initiated discovery in this lawsuit.

Through counsel, Mr. Rezutko argues first that Plaintiff's allegations of misconduct in the *Parish* litigation are inappropriate in this lawsuit given the complete resolution of that case years ago. Second, he asserts that he did not commit perjury as evidenced by the complete transcript of his March 2008 deposition testimony in which he stated that he could not recall all the details of the 1996 and 2001 investigations.

## II.    ANALYSIS

### A.    Legal Standard

Federal Rule of Civil Procedure 37(c)(1)(C) provides that

> [i]f a party fails to provide information . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless. In

addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Among the other appropriate sanctions are Plaintiff's instant prayers for relief, including "directing that the matters . . . be taken as established for purposes of the action [or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(i), (vi).

"[A] default judgment may be awarded if it is a sanction proportional to the discovery failure." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993); *see also Maynard v. Nygren*, 332 F.3d 462, 467–68 (7th Cir. 2003). Default judgment is proportional "when there are willful or bad faith violations of discovery orders[,] a pattern of contumacious conduct or dilatory tactics or the failure of less drastic sanctions." *Id.* Bad faith is "characterized by conduct which is either intentional or in reckless disregard of . . . obligations to comply with a court order." *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992). Fault is defined as "extraordinarily poor judgment" or "gross negligence" rather than "mistake or carelessness" regardless of intent. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016); *see also United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 502 (N.D. Ind. 2010).

Yet courts only impose default judgment as a Rule 37 sanction in "extreme situations [with] a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir. 1993); *see also Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003). Dismissal is the "ultimate" sanction "reserved for cases in which the offending

4

party has demonstrated willfulness, bad faith, or fault." *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *see also 360 Insight, Inc. v. Spamhaus Project*, 685 F.3d 637, 642 (7th Cir. 2011). Therefore, "before dismissing a case, the Court considers and explains why lesser sanctions would be inappropriate because sanctions must be proportionate to the circumstances surrounding a party's failure to comply with discovery rules." *G & S Metal Consultants, Inc. v. Cont'l Cas. Co.*, Cause No. 3:09-CV-493-JD, 2013WL 4950802, at *3 (N.D. Ind. Sept. 10, 2013) citing *Maynard, 332 F.3d 462 at 468*.

A district court also has the inherent authority to sanction conduct that abuses the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Dotson v. Bravo*, 321 F.3d 663, 667 (7th Cir. 2003); *see also Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 758 (7th Cir. 2005) ("The district court may dismiss a case for discovery violations or bad faith conduct in litigation under Federal Rule of Civil Procedure 37 or under the inherent authority of the district court."). Fraudulent conduct during discovery and hiding such fraud with other fraud or deceit can justify sanctions. *Greviskes*, 417 F.3d at 759. Perjury, as a fraud on the court, may also warrant the extreme sanction of dismissal or default judgment. *See Montano v. City of Chicago*, 535 F.3d 558, 564 (7th Cir. 2008); *see also Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *38 (S.D. Ind. May 18, 2015), report and recommendation adopted, No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015) (sanctioning with default judgment for spoliation, perjury, and failure to conduct discovery reasonably and in good faith).

Again however, the sanction imposed should be proportionate to the gravity of the alleged offense and "the circumstances surrounding the [alleged] failure to comply with discovery. *See Allen v. Chi. Transit Auth.*, 317 F.3d 696, 703 (7th Cir. 2003). *Langley v. Union Electric Co.*, 107 F.3d 510, 515 (7th Cir. 1997) (internal citations and quotations omitted). Furthermore, a court's use of its inherent powers must be used "with restraint and discretion." *Chambers*, 501 U.S. at 44. Before imposing sanctions, "a court must support its decision by clear and convincing evidence and should consider whether lesser sanctions would" adequately advance the goals of sanctions. *Malibu Media, LLC,* 2015 WL 2371597, at *35. In the face of such clear and convincing evidence, however, sanctions—even as extreme as default judgment—are used to prevent an evidentiary ambush, punish misconduct, deter future abuses, or compensate Plaintiff for prejudice arising from the disruption of a party's investigation and development of his case. *See Assibey-Mensah v. Ind. Univ. Bd. of Trs.*, 2:13CV260-PPS, 2016 WL 866705, at *2 (N.D. Ind. Mar. 7, 2016).

## B.   Discussion

### 1.   The City's Alleged Pattern of Delayed Production

In alleging a pattern of intentional misconduct in discovery, Plaintiff focuses the Court's attention on the City's January 4, 2019, production of the 1996 and 2001 Rezutko IA investigation files. Plaintiff contends that through discovery in each of their respective lawsuits, both he and Mr. Parish—both represented by Plaintiff's counsel— sought documentation of all complaints of misconduct against the Defendant Officers, including Mr. Rezutko, but that none were produced until January 2019. With the files

6

now in hand, Plaintiff's counsel contends that Defendants withheld these files

intentionally as far back as 2008. He also notes that the Court granted a motion in limine

in *Parish* that prevented Mr. Parish from discussing the 1996 and 2001 Rezutko IA

investigations at trial. Plaintiff then argues that Defendants' pattern of delay continued

into this case.

In his April 2018 discovery requests, Plaintiff specifically asked each Defendant

Officer, including Mr. Rezutko, to identify all Complaints ever made against him

related to his role as a law enforcement officer, with reference to internal affairs and

citizen complaints. [DE 72-19 at 2–3]. At the same time, Plaintiff asked the City to

produce "[a]ny and all Documents related to any Complaint of any person against any

of the individual Defendant Officers at any time." [DE 72-31 at 7].

With agreement from Plaintiff, the deadline for the City's responses, including

any objections, were extended for 30 days. Then in June 2018, the City served its

responses to the April 2018 discovery requests on Plaintiff. On December 7, 2018,

Plaintiff's counsel then informed Defendants of the deficiencies Plaintiff perceived in

the discovery responses, including a lack of documentation as to EPD IA investigations

of officer misconduct. [*See* DE 90-6 at 8]. Subsequent email exchanges resulted in the

scheduling of a telephonic meet and confer for December 13, 2018. In the meantime, the

City's counsel continued corresponding with Plaintiff's counsel reminding him that

objections had been made to the relevant requests for production in June, but also

promising to ask the City to look for the missing information.

Before the City's search was complete and before the Defendant Officers' counsel offered any substantive response to the December 7, 2018, letter, Plaintiff's counsel sent an email to all counsel on December 12, 2018, cancelling the December 13th meet and confer because "the parties are officially at an impasse" over the outstanding discovery disputes. [DE 90-6 at 82]. At the same time, Plaintiff's counsel sent lengthy letters to opposing counsel describing with specificity the discovery disputes and indicating his plan to file motions seeking the Court's assistance in resolving the impasse. [DE 90-6 at 83-92; DE 90-7 at 2–6, 8–10].

Nevertheless, the City renewed its search for information responsive to the alleged deficiencies. Among the information located were audiotapes of the 1996 and 2001 interviews of Mr. Rezutko, and other witnesses, related to allegations of misconduct against him. The City produced transcripts of these interviews to Plaintiff on January 4, 2019. Simultaneously, the City was working on responses to new discovery requests propounded by Plaintiff.

Plaintiff still found the City's January 2019 supplemental production incomplete. Therefore, Plaintiff filed his motion to compel [DE 73] on January 16, 2019. Plaintiff also viewed the January 2019 supplemental production as proof of an intentional strategy to delay this case by withholding relevant information until pressed by opposing counsel. Thus, he also filed the instant motion for sanctions on January 16, 2019.

Before turning to the merits of the motion for sanctions, the Court must address a preliminary matter arising from counsel's December 2018 communications regarding the disputes driving both Plaintiff's motion to compel and motion for sanctions.

Along with any Rule 37 discovery motion, the moving party "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* N.D. Ind. L.R. 37-1 (requiring movant to file separate certification of efforts to confer with opposing counsel to resolve the discovery dispute before filing a motion to compel). Rule 37(a)(1) "requires a party to have had or attempted to have had an actual meeting or conference." *Vukadinovich v. Hanover Cmty. Sch. Corp.*, 2:13-CV-144-PPS-PRC, 2014 WL 667830 (N.D. Ind. Feb. 20, 2014) (quoting *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1966)). Written, telephonic, or email communication is acceptable if the parties engage in two-way dialogue and discuss meaningfully the discovery disputes "in a genuine effort to avoid judicial intervention." *Id.* (internal quotations omitted).

Clearly, Plaintiff's counsel failed to engage in meaningful and genuine discussions with opposing counsel before seeking the assistance of the Court in resolving the alleged impasse. Clearly Plaintiff's counsel initiated Rule 37 conversations with opposing counsel to the point of scheduling a telephonic, two-way meet and confer. However, Plaintiff's counsel relied upon the email communications of counsel for only one Defendant, the City, without receiving any contact from counsel for the Defendant Officers to determine on his own that the parties had reached an impasse that made the scheduled meet and confer unnecessary. Furthermore, Plaintiff's counsel's oral argument before this Court revealed information new to both the Court and the City's counsel suggesting that further conferencing before Plaintiff's discovery

motions were filed could have been productive. Summary denial of the discovery

motions could be warranted as a result. Yet, the interests of justice dictate that a

decision on the merits be made to ensure this case progresses in a timely and

proportional fashion. *See* Fed. R. Civ. P. 1, 26(b). Therefore, the Court turns to the merits

of Plaintiff's instant motion for sanctions.

a.    *Parish* **Matters**

Plaintiff has suggested, without authority, that this Court should enter default

judgment in this case against the City for an alleged history of withholding discovery

responses dating back to 2008 in *Parish*. While the two cases involved many of the same

facts and evidence, that case has been resolved and is no longer before the Court.

Therefore, consideration of conduct in *Parish* is not warranted here for that reason

alone. However, the record also shows that Plaintiff's counsel, while representing Mr.

Parish, was directed to the relevant IA files in the City's responses to Mr. Parish's First

Set of Documents Requests dated March 18, 2008. [DE 72-7 at 4–5]. Specifically, the City

objected to Mr. Parish's request for "[a]ll Documents maintained by the [EPD] related to

any Complaint of any kind (internal, citizen, etc.)." [DE 72-7 at 5]. The City also added

that "[a]ny further documentation regarding investigations into complaints are

maintained by case number and year and not by officer name [and in] the case that the

plaintiffs request additional documentation for complaints contained in the officer's file,

the defendant can attempt to locate any additional information." [DE 72-7 at 5].

In other words, Plaintiff's counsel was given an opportunity in *Parish* to ask the

City to locate additional IA investigation documents. He evidently chose not to ask for

the exact documents he now accuses the City and Mr. Rezutko of withholding.

Therefore, Plaintiff's arguments about the City's delayed production of discovery

responses now, based upon failure to disclose Mr. Rezutko's 1996 and 2001 IA

investigation files in *Parish*, cannot succeed.

### b. *Cooper* Matters

Review of the City's conduct in the litigation of this case does not establish the

pattern of intentional withholding and delay Plaintiff alleges either. First, the City

promptly responded to Plaintiff's April 2018 discovery requests in June 2018, after

securing Plaintiff's agreement for an extension. Second, Plaintiff did not indicate any

deficiencies with the City's responses—which included objections—until almost six

months later in the letter dated December 7, 2018. As a result, the City was unaware of

the deficiency and could have reasonably assumed that Plaintiff was satisfied with its

responses. Third, once made aware of the deficiency, the City promptly conducted an

additional search in previously unsearched locations despite the difficulties inherent in

locating and retrieving old documents. The City then produced the 1996 and 2001

Rezutko IA investigation files, including transcripts of interviews with Rezutko and

other witnesses, less than 30 days later, on January 4, 2019. Consequently, Plaintiff's

motion fails to present clear and convincing evidence of willful withholding and delay,

contumacious conduct, bad faith, or fault by the City. *See Long*, 213 F.3d at 986; *Malibu

Media, LLC*, 2015 WL 2371597, at \*38.

### 2.    Rezutko's Alleged Perjury

Plaintiff also argues that the January 4, 2019, production of Mr. Rezutko's 1996 and 2001 IA investigation files establishes that he was lying in his *Parish* deposition and in interrogatories in this case when he said he did not know who his accusers were or the nature of the allegations against him in 1996 and 2001. Without more, however, Plaintiff has not provided clear and convincing evidence that Mr. Rezutko perjured himself, especially upon review of the complete transcript of his March 2008 testimony regarding his resignation from the EPD in 2001. The transcript demonstrates that Mr. Rezutko clearly knew that the 2001 IA investigation into improper police conduct played a role in his departure. While he testified as to the general nature of the allegations against him, he also indicated on multiple occasions that he did not recall details. [DE 95-4 at 4–6, 15:1–21:18]. Such memory lapses are likely to be perceived as reasonable seven years after the events and communications in question.

Mr. Rezutko's response to Plaintiff's interrogatory in this case about Complaints is similarly relevant to the question of perjury but does not constitute clear and convincing evidence of perjury. Mr. Rezutko explicitly objected to the ambiguity, overbreadth, compound nature, lack of specificity, and irrelevance of the interrogatory before acknowledging the *Parish* litigation and an excessive force lawsuit "about forty-six (46) years ago." [DE 72-20 at 5]. Mr. Rezutko also directed Plaintiff to the City's responses to the comparable request for production propounded on it. [DE 72-20 at 5]. Again, Mr. Rezutko's interrogatory response could be perceived as reasonable considering the objections.

As a result, Plaintiff's allegations of perjury amount to Plaintiff's counsel's own interpretation of evidence that should be evaluated instead by a factfinder. A motion for sanctions is not the proper mechanism for establishing facts that could be determinative in this case. The Court cannot and will not be persuaded to enter default judgment against Mr. Rezutko based upon Plaintiff's—or more likely his counsel's—speculation on one issue. Plaintiff's remedy for any potentially contradictory evidence in the record of this case is with the factfinder, either through a dispositive motion or at trial.

### 3.    Prejudice

Notably, Plaintiff has also overstated the prejudice he now clearly faces as the result of Mr. Rezutko's death. Like all parties to this case, Plaintiff cannot depose Mr. Rezutko to discuss any of the evidence disclosed in this case since he provided his discovery responses in June 2018. Yet, Plaintiff could have deposed Mr. Rezutko any time since discovery was launched in February 2018. Instead, Plaintiff's counsel reported at the September 2019 hearing that he deliberately decided to ensure that written discovery was complete before conducting Mr. Rezutko's deposition. Counsel's strategic decision is a common and reasonable way to approach discovery in civil litigation. Unfortunately in this case, the unexpected death of a key party and witness left Plaintiff and all parties without all the testimonial evidence relevant to this case due to no fault of their own. This shared prejudice is not burdening Plaintiff over any other party and is not enough on its own to justify the extreme sanction of default judgment.

#### 4.      Alternative Evidentiary Sanctions

Plaintiff's request for alternative evidentiary sanctions is also unpersuasive. As noted above, Plaintiff's concerns about the 1996 and 2001 IA investigation files and the potentially contradictory nature of Mr. Rezutko's testimony compared to recent document production are issues best resolved by the factfinder at a dispositive point in this case. Without more evidence of willful noncompliance, bad faith, fault, or perjury, the Court declines Plaintiff's invitation to sanction the City or Mr. Rezutko as defendants in this action.

### III.   CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that Plaintiff's motion for sanctions [DE 72] be **DENIED**.

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 1st day of October 2019.

S/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
